(41 App. Div. 66.)

## MARKS v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department.   May 24, 1899.)

1. MASTER AND SERVANT—PERSONAL INJURY—NEGLIGENCE OF CO-EMPLOYE.

   Two bobtail horse cars, each in charge of a driver, met on the same track.   At the request of one of the drivers, a boy about 12 years of age got on the rear platform of his car, which was a safe place, to drive the horse back to a switch, while the driver took charge of the brake at the other end.   It was necessary for the driver to get some one to assist him, as there were no other employés of the company in the vicinity.   Other boys boarded the car, and the driver pretended he was coming through it to catch them, whereupon they scrambled off, and pushing the boy who was driving off the platform, he fell under the car and was injured.   *Held* that, assuming that the boy was an emergency employé, and that his injury was due to the negligence of the driver, he and the driver were co-employés, and the railway company was not liable.

2. TRESPASSER ON STREET CAR—PERSONAL INJURY—COMPANY'S LIABILITY.

   A boy boarded a bobtail car, at the request of the driver, to drive the horse attached to the hind platform back to a switch, while the driver attended to the brake at the other end.   Other boys boarded the car, and, on the driver pretending he was coming through to catch them, they scrambled off, and, pushing the boy driving off the platform, he fell under the car and was injured.   *Held* that, assuming that he was a trespasser, the company was not liable, since the driver could not have foreseen that the injury would result from his act, and hence it was not the proximate cause thereof.

3. CARRIERS—PASSENGER FOR HIRE.

   A boy about 12 years old, at the request of the driver in charge of a bobtail street car, which met on a single track, got on the rear platform, to which the horse was hitched, and drove back to a switch, while the driver attended to the brake.   *Held*, that he was not a passenger for hire, and that the railway company was not liable for an injury caused by the negligence of the driver.

Appeal from trial term, Monroe county.

Action by Jacob Marks against the Rochester Railway Company. Plaintiff was nonsuited, and he appeals.   Affirmed.

The action was brought on the 1st day of February, 1895, to recover damages alleged to have been sustained by the plaintiff on account of injuries received by his son, Haskell H. Marks, through the alleged negligence of the defendant, a street-railroad corporation.   The plaintiff's son, at the time 11 years and 4 months of age, was run over by one of the cars of the defendant, upon St. Joseph street, in the city of Rochester, N. Y., on the 23d day of February, 1892, in consequence of which his leg was crushed so as to make amputation necessary just below the hip.   The defendant was engaged in operating a single-track railroad on St. Joseph street; the cars passing each other by means of sidings located at convenient distances apart.   The cars were drawn by one horse, were what are known as the "bobtail pattern," and each car was in charge of a single employé who was at the time driver and conductor.   The conductor's or driver's place in operating the car was on an inclosed platform at the front end, where the brake was located with which to control the movements of the car.   Passengers entered and left the car at the rear platform. Upon the day in question the plaintiff's son was engaged in chopping ice in front of his father's house, when he discovered that two of defendant's cars had met on the single track immediately in front of his father's premises. The nearest siding where the two cars could pass each other was some distance to the south from where the cars stood, and it became necessary to move the southerly car far enough south to enable it to take the siding in order to permit the other car to pass it.   After some altercation between the conductors

of the two cars, this course was determined upon. In order to take the car back to the siding, it was necessary to hitch the horse to the rear or other end of the car; and, to do this safely, it is apparent that the conductor believed the services of two persons were required,—one to drive the horse and one to manage the brake. The conductor thereupon called to the plaintiff's son, and asked him to drive the horse. The plaintiff's son complied with the request, and drove the horse to the rear end of the car; and, after the conductor had fastened the whiffletree to the car, the plaintiff's son got upon the rear platform, with the lines in his hands, and the conductor told him to go ahead, he (the conductor) going to the other end of the car to manage the brake. After the car had proceeded a short distance, a number of other boys jumped upon the car. Some of them got in the car, and commenced jolting or swinging it by dancing. At this time the car was moving quite rapidly, the horse being on a trot. The conductor hallooed to the boys to get off. They did not do so, and he hallooed again, stamped his foot, and made a rush or feint as though he were coming through the car to catch them, at which the boys took fright and scrambled off the car as fast as they could, and in doing so pushed the plaintiff's son off the platform. He fell under the car, and received the injuries complained of. The evidence was undisputed, and at the close of the plaintiff's case the learned trial justice granted the defendant's motion for a nonsuit.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Eugene Van Voorhis, for appellant.
Charles J. Bissell, for respondent.

McLENNAN, J. The plaintiff's son, Haskell H. Marks, by his guardian, brought an action against the defendant to recover the damages which he sustained on account of the accident in question. That action was tried, and resulted in a verdict for the plaintiff for the sum of $7,000. The trial justice subsequently set the verdict aside, for what he regarded as his own error in refusing a nonsuit, and made an order granting a new trial. From that order an' appeal was taken to the general term, the order was reversed, and judgment was directed for the plaintiff on the verdict. 77 Hun, 77, 28 N. Y. Supp. 314. From that judgment an appeal was taken to the court of appeals, and the judgment of the general term was reversed, and the order of the special term granting a new trial affirmed. Marks v. Railway Co., 146 N. Y. 181, 40 N. E. 782. The facts in that case and in the case at bar are identical. Indeed, the facts above quoted are quoted substantially from the opinion of the court of appeals. The only negligence of the defendant specified in the complaint in the Marks Case, supra, was that the platform upon which the plaintiff was placed, for the purpose of driving the horse, was an unsafe and an unsuitable place upon which to put a boy of the age of the plaintiff's son, to perform the duty imposed upon him. The court of appeals held that the platform of the car was not an unsafe place, that the plaintiff was sui juris, and that the defendant was not guilty of negligence in placing the plaintiff's son, through its conductor, upon the platform of the car, for the purpose of driving the horse. That being the only allegation of negligence, it was held that the plaintiff in that case could not recover. The complaint in the case at bar alleges, in addition, that the injury to the plaintiff's son was caused by the negligence of the driver or conductor of the car in question, in driving the other boys from the car, that this was done in a negligent and careless

manner, and that such negligence was the proximate cause of the injury. In view of the decision of the court of appeals in the case of Marks v. Railway Co., supra, it is only necessary to inquire whether the facts disclosed by the evidence establish a cause of action in favor of the plaintiff, when the additional allegations of the complaint charging negligence on the part of the defendant are considered. We start with the proposition that the place in which the boy was stationed to drive the horse was safe and suitable for the purpose, that he was sui juris, and that the defendant was not guilty of negligence in employing him, through its conductor, to drive the horse back to the siding. It would appear by the evidence that such an emergency arose in the management of the defendant's cars that it was necessary for the conductor to obtain another person to assist him in taking the car back to the siding. The evidence is uncontradicted that there were passengers upon the car, that there was no brake at the end of the car to which it was necessary to hitch the horse, and that only by means of the brake at the other end could the car be prevented from running upon the horse or be stopped. Under those circumstances, it would seem that it would have been grossly negligent for the defendant's conductor to have driven the horse himself, and left the brake unattended. The driver of the other car had his own car and horse to look after, and there was no other employé of the defendant in the vicinity. In the opinion of the general term (77 Hun, 77, 28 N. Y. Supp. 314) it was said:

"Whether such was the emergency in this case was a question properly submitted to the jury, but, if the answer to it had been in the negative, the verdict might properly have been set aside as contrary to the evidence. It is a matter of demonstration that this car could not have been drawn backward, with safety to the passengers and the property of the defendant, with only one man to manage both the horse at one end and the brake at the other end of the car."

The court of appeals, however, held in the Marks Case, supra (although such holding was not necessary to the decision rendered by it):

"Whether or not an emergency existed, such as to justify the calling in of outside assistance, was a question of fact for the jury."

It becomes important, therefore, to determine what the rights of the plaintiff are in case his son was an emergency employé, and what his rights are in case he was not an emergency employé, but a trespasser on defendant's cars. Marks Case, supra. It is believed that there is no construction which can be placed upon the evidence which would justify the conclusion that the plaintiff's son was a volunteer, or that he was a passenger upon defendant's car.

First then, assuming that the plaintiff's son was an emergency employé, what are his rights, and what is the liability of the defendant for injuries sustained by him while so employed? Concededly, in the employment of the plaintiff's son the conductor stood in the place of the master, the defendant. Any contract which he made in that regard was enforceable against the master. If, under those circumstances, the person so representing the master employs an incompetent person, or a less number of persons than are requisite for the performance of the work, or puts the person so employed in an

unsafe place, or furnishes him imperfect or unsafe tools or appliances, and injury results because of such failure, the master is liable. Bradley v. Railroad Co., 62 N. Y. 99; Flike v. Railroad Co., 53 N. Y. 549. The contention of the plaintiff is that as to an emergency employé the relation of co-employé does not exist, but that, for every injury sustained by such emergency employé through the negligence of the employé employing him, the master is liable. In support of that contention the learned counsel for the plaintiff cites Beach, Contrib. Neg. § 342, where the rule is stated as follows:

"But wherever there is a temporary employment of a bystander, in an emergency, by a servant who may be held to have had the authority to contract for the assistance, the master will be liable if such an assistant is injured by the negligence of his servants."

The author cites in support of the rule thus stated by him Central Trust Co. v. Texas & St. L. Ry. Co., 32 Fed. 448; Bradley v. Railroad Co., 62 N. Y. 99; Terre Haute & I. R. Co. v. McMurray, 98 Ind. 358; Louisville, E. & St. L. Ry. Co. v. McVay, Id. 391. Upon an examination of the cases cited, it will be found that they do not support the rule as stated by the author, and as contended for by the plaintiff's counsel. In the Central Trust Co. Case, supra, the plaintiff was employed in an emergency by the yard master, to act as brakeman in making up a train of cars. He was injured because of a defective brake, which defect had existed for such length of time that, in the exercise of ordinary care and prudence, the defendant railroad company ought to have known of its existence; and it was held that the plaintiff was entitled to recover. The well-settled rule was simply reiterated in that case, namely, that if a master, directly or through his duly-authorized agents, furnishes an employé an unsafe place in which to work, or provides him with defective tools or appliances with which to work, and injury results solely on account thereof, the master is liable. In the Bradley Case, supra, the defendant's track master had authority to employ men temporarily to keep its tracks clear from snow. The track master employed the plaintiff to go upon the tracks and aid in removing an accumulation of snow therefrom, and expressly agreed with the plaintiff that, if he would do so, the track master would keep watch, and notify the plaintiff of an approaching train. This the track master failed to do, and as a result the plaintiff was struck by a train, and received the injury complained of. Under those circumstances the court held that the defendant was liable, solely because of the fact that the track master failed to keep and perform the agreement which he had made with the plaintiff, which was an inducing cause which led him to enter upon the work in question. In the Terre Haute Case, supra, a conductor, who was the highest agent of the defendant at the place of an accident, and who had implied authority to do so, engaged a surgeon to attend an injured brakeman; and it was held that the railroad company was liable for the value of the services rendered by such surgeon. In the Louisville, E. & St. L. Ry. Co. Case, supra, it was simply held that a general manager had implied authority to bind the railroad company by which he was employed, by contracts for nursing, etc., of employés injured on the line of the railroad.

Beach, Contrib. Neg. § 343, also says:

"But, where one assists the servants of another, at their request, for the purpose of expediting his own business, or the business of the master, the rule is otherwise; and, if he is injured by the servant's negligence, the master is liable. In such a case the relation of fellow servant is held not to exist, and in case of injury the rule of respondeat superior applies."

In support of the proposition thus stated, the learned author cites Holmes v. Railway Co., L. R. 4 Exch. 254; Wright v. Railway Co., 1 Q. B. Div. 252. We think that, upon an examination of those cases, it will be found that they are in no sense authority for the proposition stated. In the case last cited the plaintiff was an emergency employé, assisting in loading some stock upon one of the defendant's cars. He was injured, and it was held that the defendant was liable; but the liability of the defendant was put upon the express ground that the loading was attempted to be done by the defendant with an insufficient number of servants, to the defendant's knowledge, and that the injury resulted by reason of that fact.

The learned counsel for the plaintiff also calls attention to the rule as laid down by 2 Thomp. Neg. p. 1040, § 39, in which the rule is stated as follows:

"If, in an emergency, a foreman or superintendent of work calls in a stranger to perform a special service, and while so engaged the stranger is injured in consequence of the negligence of such foreman, he may recover damages of the master. In such a case the foreman, acting within his authority, is deemed the alter ego of the master, and his negligence is the master's negligence."

No case is cited in support of the proposition, other than those already referred to. Attention has not been called to any case which supports the plaintiff's contention.

We have found no case which changes or modifies the rule laid down in Loughlin v. State, 105 N. Y. 159, 11 N. E. 371, which is stated as follows:

"If a co-servant whose acts caused the injury was at the time representing the master in doing the master's duty, the master is liable. If, on the other hand, he was simply performing the work of a servant, in his character of a servant or employé merely, the master is not liable."

In the employment of an emergency man, the servant of the master making such employment acts for, and stands in the place of, the master; and he is charged with all the duties and responsibilities that the master would have been chargeable with if he had made the employment direct. He is charged with the duty of seeing to it that a reasonably safe place is provided for such emergency man to work in. He is charged with the duty of seeing to it that such emergency man is furnished with reasonably safe tools and appliances with which to perform the work. He is charged with the duty of seeing to it that the other employés with whom such emergency man is to work are not incompetent, and to exercise ordinary care and prudence in ascertaining whether they are incompetent or not. And, having properly discharged all those duties, when such servant employer returns to the performance of his duties as servant he ceases to occupy the relation of master, and becomes co-employé, as to the person employed by him, and as to every other person in the master's serv-

ice.  If an engineer upon an engine drawing a train upon a railroad discovers that it is necessary to procure a fireman, by reason of the sudden illness of the fireman the master has employed, while so acting he represents the master.  Having fully discharged the duty of the master, so far as the employment is concerned, when he commences to operate his engine he ceases to act in the capacity of master, and sustains the relation of co-employé to the fireman whom he employed in the emergency, the same as to the brakemen and to the other employés upon the train.  It cannot be of consequence that the employment of an emergency man is continued but a few moments, as in the case at bar, or that the service continues for hours or days.  The moment that the employé has completed the hiring of the emergency man, properly discharged the duty of the master in that regard, and resumes his place as servant,—enters upon the performance of his work as such,—he ceases to represent the master, and for all purposes is a co-employé; and the master is not liable, even to an emergency employé, for his negligence.  In the Marks Case, supra, upon the same facts disclosed by the record in this case, the court of appeals said that the defendant's conductor or driver fully discharged his duty to the plaintiff's son, so far as the employment was concerned, that he was a proper person to employ for the performance of the duty required of him, and that he was furnished a safe place in which to perform such duty.  Having done all that, it would seem clear that when the defendant's conductor went to the other end of the car, and commenced operating the brake and commenced managing the car, he became a co-employé with the plaintiff's son, assuming that he was an emergency employé; and, if his negligence caused the injury sustained by the plaintiff's son, it was the negligence of a co-employé, for which the defendant is not liable.

Second, assuming that the jury, upon the evidence, might have found that the plaintiff's son was not an emergency employé, but that he was a trespasser upon defendant's car, and sustained that relation to the defendant when injured, can the plaintiff recover?  A railroad company owes the duty to a trespasser riding in its cars or upon its trains, in case his removal therefrom is attempted, to remove him in a reasonably safe and prudent manner.  In the performance of such duty the employés of a railroad company stand in the place of the company, and for any negligence in the performance of such duty by an employé, which causes injury to such trespasser, the master is liable, provided such negligence is the proximate cause of the injury, and the person injured is free from contributory negligence.  Clark v. Railroad Co., 40 Hun, 605, affirmed in 113 N. Y. 670, 21 N. E. 1116; Ansteth v. Railway Co., 145 N. Y. 210, 39 N. E. 708; McCann v. Railroad Co., 117 N. Y. 505, 23 N. E. 164.  Upon the evidence in this case, it is important to determine whether the act of the conductor in driving the boys from the car, assuming he acted in a negligent manner as to them, was the proximate cause of the injury sustained by the plaintiff's son.  It will be borne in mind that it has been settled by the decision in the Marks Case, supra, that the defendant's conductor was not guilty of negligence in placing the plaintiff's son upon the platform where he was, and employing him to drive the horse at-

tached to the car, and also that he was sui juris. It also quite clearly appears by the evidence that each of the other boys was sui juris. Under those circumstances, was the act of the conductor in making a feint to catch the other boys, for the purpose of scaring them off the car, such an act that it could have been reasonably expected that it would result in injury to the plaintiff's son? If not, under the authorities, it was not the proximate cause, and the defendant is not liable to the plaintiff for the injury. The act of the conductor was not directed to the plaintiff's son, and was not so understood by him. The direction given by the conductor to the boys to leave the car was not spoken or given to the plaintiff's son, did not include him, and was not so understood by him. No word or act of the conductor caused the plaintiff's son to change his place or attitude in the least. He was not frightened. He knew that he was not to be caught or punished by the conductor. He was fully aware that all the acts of the conductor were for the purpose of driving the other boys from the car, and were in no way intended to influence his action, or in any way directed towards him. In order that the plaintiff may recover upon this theory of the case, the evidence must be such as to justify the conclusion that the act of the conductor was of such character that it reasonably could have been expected that when the other boys left the car they would throw the plaintiff's son from the platform upon which he was standing.

In Whart. Neg. § 134, it is said:

"Supposing that, if it had not been for the intervention of a responsible third party, the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject-matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, * * * he is the one who is liable to the person injured. I may be liable to him for my negligence in getting him into difficulty, but I am not liable to others for the negligence which he alone was the cause of making operative."

The above was quoted with approval by the court of appeals in Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679. The court in that case also quotes with approval the following definition:

"A proximate cause is one in which is involved the idea of necessity. It is one the connection between which and the effect is plain and intelligible. It is one which can be used as a term by which a proposition can be demonstrated; that is, one which can be reasoned from conclusively. A remote cause is one which is inconclusive in reasoning,—a cause from which no certain conclusion can be legitimately drawn. In other words, a remote cause is a cause the connection between which and the effect is uncertain, vague, and indeterminate."

In the case at bar we think there was no circumstance which would lead any reasonable mind to suspect that the action of the conductor, which was directed towards the other boys upon the car, would result in causing the plaintiff's son to fall from the car and to sustain the injury which he did. If so, in any case, if a conductor orders a trespasser from a car peremptorily, he should know or anticipate that such person may rush out of the car in such manner as to cause injury to other passengers. We think, also, that the result of the action

of the conductor was so unusual that the defendant is not liable. Dougan v. Transportation Co., 56 N. Y. 1; Cleveland v. Steam-Boat Co., 125 N. Y. 299, 26 N. E. 327; Knox v. Railroad Co., 69 Hun, 93, 23 N. Y. Supp. 198. It is concluded that, under the authorities, the acts of the defendant's conductor were not the proximate cause of the injury sustained by the plaintiff's son, but that it resulted through the independent acts of other persons, which could not reasonably be anticipated, and for which the defendant is not liable.

The contention of the plaintiff's counsel that the jury would have been justified in finding, upon the evidence, that the plaintiff's son was a passenger upon the defendant's car, is untenable. There is not a particle of evidence in the case to indicate that the plaintiff's son was a passenger for hire, or that it was intended, either by him or by the conductor, that that relation should exist. At the most, it could only have been found that he was invited by the conductor to take a gratuitous ride to the siding. It is not believed that it is the law of this state that a railroad company may be made liable to a person who is sui juris, and who accepts a gratuitous ride, upon the invitation of the company's conductor, in violation of his duty, for injuries sustained by him while occupying that relation. Whatever may be the rule as to the liability of a railroad company, which, through its conductor or other employé, invites or induces helpless children to enter upon its cars for other purposes than to become passengers, who, while so situated, are injured through the negligence of such employé, it can have no applicability to a person who is sui juris, and fully knows and appreciates the nature of the invitation. It is held that a conductor or other subordinate employed by a railroad corporation, who invites a person who is sui juris to take a gratuitous ride upon the cars of such corporation, in violation of his duty, in case such invitation is accepted, and injury results to such person through the negligence of such conductor or other employé, cannot thus make the corporation liable for the injuries sustained by such person. It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.