HATCH, J.
—Practically, there is no disputed question of fact in this case. It appeared that plaintiff was employed with others in unloading a vessel laden with a cargo of coal. He was perfectly familiar with the work and the method of unloading, having been employed in similar work by the defendant for upward of 20 years. The coal was shoveled into buckets, which were raised. and lowered into the hold of the vessel by means of a hoisting apparatus. The coal was removed from various parts of the vessel, and as the depth in the hold became greater the men ascended— when they had occasion—to the deck by means of rope ladders, which were let down the hatchway from the deck. It does not appear that the ladders furnished belonged to defendant, but to the vessel, and it was usually the custom for the workmen to obtain the ladders from it. Plaintiff was unable to state who furnished them, and those of his witnesses who were questioned upon the subject said that the men generally got the ladders from the vessel, or were *527 told by defendant’s manager to get them on the vessel, and they were lowered by the men from above who announced to those below where the ladders were situate. There was no particular place where the ladders were placed. That depended upon where the men were at work, the amount of eonl that had been removed, and the selection by the men who lowered the ladders. The circumstances which led up to the accident were these: The coal had been removed until the keelson in a part, at least, of the barge, was exposed» The ladder was let down a hatchway for the men to ascend for dinner. In order to reach this ladder, plaintiff and others were obliged to get upon a bucket of coal, step upon the keelson, which was 3 1-2 to 4 feet high, and pass along that to the ladder. The keelson was usually about 2 feet wide, but had been narrowed and worn rounding by the action of the coal. One of the men from above announced where the ladder was, and plaintiff, with others,—some ahead of him, some behind, started for the ladder to ascend. Plaintiff stepped upon the bucket of coal, and from thence onto the keelson, and took one step, when, on account of the rounding top, he slipped and fell, sustaining the injury complained of. Some workmen preceded him, some followed after, and all but himself had a safe passage.
We are of opinion that upon these facts no cause of action was made out against the defendant. The men engaged in unloading this vessel were paid by the ton for unloading, and, while their wo.k was under the general supervision of a manager, yet it is evident that in its prosecution, to a very large extent, they regulated the course and conduct of th© work. So far as the conditions existing in the hold of the vessel were concerned, they were created by the workmen and were con finally shifting and changing as the work progressed. It is quite evident that whether a given place in the hold became dangerous or not, would depend entirely upon the manner in which the workmen removed the cargo, and whether it was safe or otherwise would become a condition of their own creation. Under such circumstances, no liability attaches to the master for injuries received on account of such condition. O’Connell v. Clark, 6 App. Div. 33, Loughlin v. State, 105 N. Y. 159, 6, S. R. 826. This keelson was exposed by the workmen themselves, and they knew, or were chargeable Avith knoAvledge of its condition The defendant could not be supposed to know at what ruonent it would be exposed or Avhat would be its condition wh en exposed, or that the men would attempt to make use of it. Nor could he know if it would be plainly visible, or dimly seen. But all of these conditions Avere known to plaintiff or his fellow workmen, and they Avere chargeable with knoAvledge of whatever danger© *528 there was in the situation. Nor was the master responsible for the ladder being placed in this position. The men made selection of the place where they would lower the ladder, and over this matter it is not pretended that he exercised or was expected to exercise the slightest control. It is true that the evidence warrants the assumption that the manager told the men where to get the ladders. But what use they should make of them when obtained what hatchway they should be let down, and what notice should be given to the men below, was always regulated by the men, and there is not the slightest proof to show that the master exercised any control, or gave any directions, or was expected to give any, in connection therewith. We are not aware of any case, and none has been called to our attention, where liability attached to the master under such circumstances. We are unable to discover from the record any evidence upon which to predicate negligence of the defendant.
The judgment should therefore be reversed, and a new trial ordered, with costs to abide the event.
All concur.