(63 App. Div. 377.)

### PAGE v. NAUGHTON et al.

(Supreme Court, Appellate Division, Second Department. July 25, 1901.)

1. INJURIES TO SERVANT—FELLOW SERVANTS—NEGLIGENCE.

Plaintiff, while working for defendants, who were engaged in constructing a street railway, went into a storehouse used for keeping cement, to remove some bags of cement, when two piles thereof fell on him. The bags were piled, under supervision of defendants' superintendent, by defendants' employés, and the work of removal was performed in the presence of a foreman. It did not appear that the defendants' servants were incompetent. *Held*, that any negligence in the manual work of piling or removing, whether that of the superintendent, foreman, or a common workman, was the negligence of a fellow servant.

2. SAME—ALLEGATIONS OF COMPLAINT—EVIDENCE—ADMISSIBILITY.

Where, in an action for injuries to a servant caused by the falling on him of bags of cement piled up in defendants' warehouse, there was no allegation in the complaint that the building was unsafe, evidence of the condition of the floor, in the absence of an amendment of the complaint, was properly limited to the question of the care with which the bags were piled.

3. SAME—UNSAFE PLACE—EVIDENCE—ALLEGATIONS.

Evidence that the floor was out of level and shaky, received on the
question of the care with which the bags were piled, will not support a
judgment for plaintiff, on the theory that defendants failed to furnish a
safe place to work in.

4. SAME—NEGLIGENCE OF FELLOW SERVANT.

Any danger arising from the condition of the bags which might be due
to the negligence of a fellow workman would not render the place an
unsafe place to work in, in a legal sense, until the condition had existed
long enough to charge defendants with a failure of duty in some of their
direct obligations.

Appeal from trial term.

Action for injuries by Henry Page against Bernard Naughton and
Daniel F. McMahon. From a judgment in favor of plaintiff, defend-
ants appeal. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ.

Thomas C. O'Sullivan (Emmet J. Murphy, on the brief), for appel-
lants.

Michael J. Tierney, for respondent.

HIRSCHBERG, J. The plaintiff was seriously injured while work-
ing for the defendants, and has recovered a judgment for damages.
The complaint alleges that the defendants were contractors engaged
in constructing a street railway at New Rochelle, where they had a
storehouse for the purpose of keeping, piled up and stored, bags of
cement weighing each upwards of 200 pounds, and necessary to be
used in the construction of the work; that the plaintiff on October
26, 1898, was in the storehouse for the purpose of removing some
of these bags in order to load them on his wagon, when two piles
or tiers of the bags fell upon him, inflicting the injuries complained
of; that the defendants were negligent, in that they did not cause
the said bags of cement so piled up and stored to be properly, secure-
ly, and safely so piled up; and that the bags fell over and upon the
plaintiff by reason of having been improperly, insecurely, and un-
safely piled up, as aforesaid. The evidence left it somewhat in
doubt whether the bags fell because of an unsafe and insecure piling
in the first place, or because of an unsafe and insecure condition
resulting from the process of removing the bags for use upon the
work from time to time. There were originally 1,700 bags in the
storehouse, of which number 1,000 had been removed at the time of
the accident; and it may be assumed, in support of the judgment,
that the jury found that the bags which fell had been insecurely
piled originally, and fell because of that fact. There was no proof
that the defendants personally piled these bags. On the contrary,
it appears that the work was done under the supervision of the de-
fendants' superintendent, by the defendants' employés, and that the
work of removal was performed in the presence of a foreman. There
was no proof or claim of incompetency on the part of any of defend-
ants' servants. Assuming that the evidence sufficiently establishes
that the men engaged in piling up the bags were negligent in the
performance of that work, and the plaintiff was thereby injured,

the question is presented whether or not the defendants are liable for the consequences. I am unable to see in the circumstances any fault of the defendants with which they are legally chargeable on the theory of negligence. The general work in which they and all their servants were engaged was the construction of the railroad. The storing of the cement for use as required from time to time was a mere detail of that work. If the defendants furnished a safe place to store it, competent men to handle it, a skillful superintendent and foreman to supervise and direct the various processes of storing and removing it, and to inspect its state and condition with reasonable frequency, they did all which the law imposes upon the relation of master. The law does not compel the master to do the actual, physical work himself. There is no suggestion in the case that the accident resulted because of any failure on the defendants' part in the discharge of any recognized branch of the master's duty. If it resulted because of negligence in the manner of the performance of the manual work of piling or removing, whether such negligence was that of the superintendent, foreman, or a common workman, it was the negligence of a fellow servant, and, as such, a risk of the employment which the plaintiff assumed. The plaintiff's counsel appreciated the difficulty suggested, and sought to avoid it by a claim that the building was unsafe, in that the floor was out of level and shaky. There was no such allegation in the complaint, and the evidence of the condition of the floor was received solely as bearing upon the question of the care with which the bags were, and were to be, piled; the learned trial justice saying:

"If it was not level, the jury should say whether or not the piling of those bags—the retaining of them in position—ought not to have been done with reference to the irregularity of the floor. I do not think the testimony is to be considered in the case for any other purpose."

With the evidence limited to this purpose, as it properly should be in the absence of an amendment to the complaint, the judgment cannot be supported on the theory that the defendants failed to furnish the plaintiff with a safe place to work in. The place in which to work for the time being was the building, and that is not charged in the complaint to have been unsafe. There is no proof that the bags were not piled in accordance with the requirements of the floor's irregularity, or, indeed, any proof on that subject, and certainly none tending to establish that if they were not so piled it was due to any omission of the defendants' duty specifically enjoined upon them as the plaintiff's masters. Any danger arising from the condition of the bags which was or might be due to the negligence of a fellow workman would not render the place an unsafe place to work in, in a legal sense. If the act or omission which created the danger was not one for which the defendants would be compellable to respond in damages, they cannot be held liable until at least the condition has existed long enough to charge them with a failure of duty in some feature of their direct obligations. In this respect the case differs from McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373, cited by the plaintiff. That was not the case of a building in which merchandise was insecurely piled by an employé, but was the case of a

workman engaged in cleaning out a grain bin, who was killed because of the peculiar action of grain when heated. He was ordered by the master's alter ego into a position of obvious danger, without the exercise of any care or precaution whatever on the latter's part to secure his safety. The decision rests upon the principle that where the master personally directs the performance of work by his servant at a place which may become dangerous, but such danger may be foreseen and guarded against by the exercise of reasonable care, it is the master's duty to exercise such care and adopt such precautions as will protect the servant. This principle has no application to the ordinary details of routine work not dangerous in itself, and which can only become dangerous when performed in a careless manner by the workmen themselves. The case at bar is more like that of Ford v. Railway Co., 117 N. Y. 638, 22 N. E. 946. There the plaintiff's intestate, who was in the defendant's employ as a switchman, while engaged in the performance of his duties as such, was struck and killed by timber falling from a passing car which was used by the defendant in its business. The accident was the result of an improper loading of the car by the defendant's employés, and the court held that, as they were the intestate's co-employés, the defendant was not responsible to him for their carelessness. The case of Byrnes v. Railroad Co., 113 N. Y. 251, 21 N. E. 50, is to the like effect. In Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742, the plaintiff's intestate, while engaged with others in loading a vessel, was struck by one of the descending loads, and killed by falling into the hold. If the plank upon which he stood at the time had been laid in the usual manner, his life would have been saved. That it was not so laid was due to the negligence of fellow servants, but it was sought to sustain the plaintiff's judgment on the claim that the place furnished to her intestate to work in was unsafe. In reversing the judgment the court said:

"The negligence, therefore, upon which the judgment rests, is the omission to lay the exterior plank; and the question discussed is to whom that duty pertained, and whose negligence caused the injury. It has been charged upon the master, for the reason that it is his duty to furnish to his servants a reasonably safe place in which to do their work. But the place which the master furnished was the ship itself, constructed in the usual way, and which became unsafe, not by reason of any careless or negligent plan or manner of construction, as to which no criticism is made, but solely from the way in which the longshoremen did their work."

In O'Connell v. Clark, 22 App. Div. 466, 48 N. Y. Supp. 74, the plaintiff was injured by a bale of jute falling upon him in the process of unloading a ship's cargo. Mr. Justice Cullen said (page 467, 22 App. Div., and page 75, 48 N. Y. Supp.):

"It is the duty of the master to use reasonable care to provide the servant with a safe place to work, with safe and suitable appliances, and to carry on the work in a reasonably safe manner. The present case does not present the question of a safe place. Of course, in one sense, the place at which the bale fell upon the plaintiff and injured him was unsafe. In the same sense, a place in the strongest and most substantial factory would be unsafe if a missile from the outside should enter the factory and strike there. But the principle of a safe place does not apply where the prosecution of the work itself makes the place and creates its dangers."

The general principle herein expressed will be found further supported in Rhodes v. Lauer, 32 App. Div. 206, 53 N. Y. Supp. 162; Golden v. Sieghardt, 33 App. Div. 161, 53 N. Y. Supp. 460; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021; Capasso v. Woolfolk, 163 N. Y. 472, 57 N. E. 760; and Di Vito v. Crage, 165 N. Y. 378, 59 N. E. 141. The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.